CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 13 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| EARL HUDSON, | ) |
| | ) Civil Action No. 7:11CV00466 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) By: Hon. Glen E. Conrad |
| BODDIE-NOELL ENTERPRISES, INC., | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

In this premises liability action, Earl Hudson ("Hudson"), seeks to recover for personal injuries sustained after he allegedly slipped on a patch of ice outside the entrance to a Hardee's restaurant owned and operated by the defendant, Boddie-Noell Enterprises, Inc. ("Boddie-Noell"). The case is presently before the court on the defendant's motion for summary judgment. For the reasons stated below, the defendant's motion will be denied.

### Factual and Procedural Background

The following facts are presented in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that all evidence must be construed in the light most favorable to the party opposing summary judgment).

On the morning of December 17, 2010, Hudson and his wife, Mary, traveled to Roanoke from their home in Franklin County for a medical appointment. Reports from the National Climatic Data Center indicate that approximately three inches of snow and freezing rain had fallen in Roanoke the day before and remained on the ground.

Following the medical appointment, the couple went to the Hardee's restaurant on Route 419, where they arrived just before 11:00 a.m. According to Mary, portions of the restaurant's parking lot and sidewalks had been cleared, while other areas were still covered with snow.

Mary entered the restaurant first. Immediately prior to entering the restaurant, she observed an area of "black ice . . . right as you get ready to step in the door." (Mary Hudson Dep. at 41.) Mary testified that it appeared that the particular area of the sidewalk had not been salted or treated.

While Mary waited to place the couple's order, the plaintiff attempted to enter the restaurant. He did not have any trouble "until [he] went to the door and pulled on it and [his] feet went out from under [him]." (Hudson Dep. at 65.) The incident happened very quickly and Hudson did not see what caused him to fall. During his deposition, Hudson testified as follows:

> Q. And when did you first realize that you were falling?
>
> A. When I started to fall. It happened so quickly, you didn't know it.
>
> Q. And did you know what caused you to fall?
>
> A. All I know is my feet slipped out from under me.
>
> Q. Okay.
>
> A. My feet went back this way and I'm grabbing to try to hold the door because I had my arm in it, and I went all the way down and hit on this wrist and arm.
>
> Q. After you fell, did you see anything on the ground?
>
> A. Ma'am, I didn't see nothing; I was knocked out.
>
> . . .
>
> Q. Did you ever see any black ice?
>
> A. I didn't see nothing, ma'am, except stars.
>
> Q. Okay.
>
> A. When I hit right here, that did me for a little while.

(Id. at 74-76.)

Deontay Gray, who saw Hudson fall, and Donald Dean, another customer, helped lift Hudson up and into the restaurant. Dean testified at his deposition that there was ice "[r]ight in front of the door" in the area in which Hudson fell, and that an ice chipper was sitting near the entrance. (Dean Dep. at 11-13.) When asked to describe the patch of ice, Dean testified that "[i]t was frozen layers . . . where you had tracked like you had walked on it and then it had froze[n] instead of melting." (Id. at 14.)

Hudson fractured his left wrist and three ribs as a result of the fall. He also suffered from a concussion and "some swelling in the brain." (Hudson Dep. at 36.)

Hudson filed this negligence action against Boddie-Noell in the Circuit Court for the County of Roanoke. Boddie-Noell then removed the action to this court on the basis of diversity of citizenship. Following the close of discovery, Boddie-Noell moved for summary judgment. The court held a hearing on the motion on June 5, 2012.

## Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, an award of summary judgment is appropriate only "if the movant shows that there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the court must construe the record in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. To withstand summary judgment, the non-moving party must offer evidence from which a reasonable jury could return a verdict for that party. Id. at 252.

## Discussion

"The essential elements of a negligence claim in Virginia, as elsewhere, are (1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3)

3

injury to the plaintiff proximately caused by the breach." Talley v. Danek Medical, Inc., 179 F.3d 154. 1547 (4th Cir. 1999). In moving for summary judgment on Hudson's claim of negligence, Boddie-Noell argues that Hudson's evidence is insufficient to establish any of these essential elements, and that it is clear, as a matter of law, that Hudson was guilty of contributory negligence. For the following reasons, the court concludes that genuine issues of material fact preclude the entry of summary judgment in favor of the defendant.

I.   **Duty**

Turning first to the element of duty, the court notes that it is undisputed that Hudson was an invitee on Boddie-Noell's premises and, thus, that the defendant owed him "a duty of using ordinary care to maintain its premises in a reasonably safe manner and to warn [him] of any hidden dangers." Amos v. NationsBank, N.A., 504 S.E.2d 365, 366 (Va. 1998). On the other hand, Boddie-Noell was not the insurer of Hudson's safety, Miracle Mart, Inc. v. Webb, 137 S.E.2d 887, 890 (Va. 1964), and it is well established that a business owner has no duty to remove ice during the time that moisture is falling and freezing on the ground. FAD Ltd. Partnership v. Feagley, 377 S.E.2d 437, 438 (Va. 1989). Instead, "a business establishment . . . may wait until the end of a storm and a reasonable time thereafter before removing ice and snow from an outdoor entrance, walk, platform or steps." Amos, 504 S.E.2d at 366.

As the plaintiff, Hudson bears the burden of establishing that, at the time of his fall, Boddie-Noell had the duty to clear its premises of ice and snow. Id. The defendant correctly notes that whether this duty had arisen at the time of Hudson's fall "is a 'pure question of law' to be decided by the court." Id. (quoting Burns v. Johnson, 458 S.E.2d 448, 450 (Va. 1995)). However, when the existence of such duty depends on the resolution of a material factual dispute, the facts should first be determined by the fact finder. See, e.g., Sanderson v. Boddie-

4

Noell Enterprises, Inc., 2005 U.S. Dist. LEXIS 41764, at *11 (E.D. Va. June 13, 2005) (assuming, for the purposes of the defendant's summary judgment motion, that Boddie-Noell had a duty to employ reasonable efforts to remove ice and snow from its sidewalks, since there was "a genuine dispute of fact respecting whether, at the time of Sanderson's fall, the storm had ended").

In the instant case, the court agrees with Hudson that a genuine factual dispute exists with respect to whether the winter storm had ended at the time of his fall. Although Hudson's wife and Deontay Gray testified that there was frozen precipitation falling at the time that Hudson attempted to enter the restaurant, reports from the National Climatic Data Center indicate that the precipitation ended in Roanoke on the evening of December 16, 2010, and that no precipitation fell on the day of the incident. Likewise, Donald Dean testified that he did not recall seeing any rain or sleet when he traveled to the restaurant on the day in question. Because the court must construe the evidence in the light most favorable to Hudson, the court is unable to conclude, at this stage of the proceedings, that Boddie-Noell had no duty to employ reasonable efforts to remove ice and snow from its entrances at the time of Hudson's fall.

Boddie-Noell alternatively argues that it had no duty to warn Hudson about the patch of ice because it was open and obvious. See Fobbs v. Webb Bldg. Ltd. P'ship, 349 S.E.2d 355, 357 (Va. 1986) ("An owner of premises owes a duty to its invitee . . . to use ordinary care to warn its invitee of any unsafe condition that was known, or by the use of ordinary care should have been known, to the owner; except that the owner has no duty to warn its invitee of an unsafe condition which is open and obvious to a reasonable person exercising ordinary care for his own safety."). The question of whether a dangerous condition was open and obvious is normally one for the jury to determine. See Volpe v. City of Lexington, 708 S.E.2d 824, 828 (Va. 2011) (holding that

the "factually specific determination" of whether a dam presented an open and obvious danger "was an issue for the jury," and that the lower court erred in deciding the issue as a matter of law).

Viewing the evidence in the light most favorable to Hudson, the court concludes that reasonable minds could differ as to whether the ice was an open and obvious danger that Hudson should have observed and, thus, that Boddie-Noell is not entitled to summary judgment on this ground. While Donald Dean and Mary Hudson testified that they observed ice by the door, they also indicated that they did not see the ice until they were on it or beside it. Indeed, Mary Hudson described the substance as "black ice." (Mary Hudson Dep. at 41.) As other courts have recognized, black ice "by its very nature . . . is not noticeable upon casual inspection." Woodard v. Erp Operating Ltd. P'ship, 351 F. Supp. 2d 708, 715 (E.D. Mich. 2005) (holding that the alleged presence of black ice created a factual issue for the jury to determine concerning whether the danger was open and obvious, where the plaintiff testified that he saw the ice after he fell); see also Ashley v. Waffle House, Inc., No. 6:04-22502-RBH, 2006 U.S. Dist. LEXIS 2880, at *8-11 ( D.S.C. Jan. 10, 2006) (denying defendant's motion for summary judgment where the plaintiff allegedly slipped on black ice at the entrance to the defendant's restaurant).

In addition, the proximity of Hudson's fall to the restaurant cannot be ignored. As the district court noted in Ashley, a rational jury could find that a person who had successfully navigated a parking lot or sidewalk "could also reasonably believe that the entrance was navigable, especially where the ice at the entrance was allegedly black ice." Ashley, 2006 U.S. Dist. LEXIS 2880, at *11. For these reasons, the court is unable to conclude, as a matter of law,

6

that the patch of ice was "open and obvious to a reasonable person exercising ordinary care for his own safety." Fobbs, 349 S.E.2d at 357.

## II. Breach

Boddie-Noell next argues that Hudson cannot establish that it had actual or constructive notice of the presence of the ice that allegedly caused Hudson to fall, or that it failed to exercise ordinary care to make its premises reasonably safe under the circumstances. For the following reasons, the court concludes that material factual disputes preclude the entry of summary judgment with respect to both of these issues.

In order for Boddie-Noell to be adjudged negligent in this case, Hudson must prove that Boddie-Noell "had actual or constructive notice" of the dangerous condition. Ashby v. Faison & Assocs., Inc., 440 S.E.2d 603, 605 (Va. 1994). Specifically, he must show that Boddie-Noell "knew or should have known" of the ice that allegedly caused his fall and "failed to remove it within a reasonable time or to warn of its presence." Id.; see also Miracle Mart, Inc., 137 S.E.2d at 890 ("[I]n order to impose liability for injury to an invitee the dangerous condition must have been known to the owner or occupant of the establishment, or have existed for such a length of time as to make it the defendant's duty in the exercise of ordinary care to have discovered it.").

Applying this standard, the court is unable to conclude that Boddie-Noell is entitled to summary judgment on the issue of notice. As set forth above, the alleged patch of ice was located immediately outside the entrance to the restaurant, in an area in which customers would need to walk. Donald Dean testified that the ice appeared to have been packed down by customers, and that it was in the same vicinity as an ice chipper. Although Jeannette Barrios, the

7

manager on duty, could not recall when she inspected the area during the three-hour period before the plaintiff's fall, Barrios testified that she was supposed to inspect the area "every hour." (Barrios Dep. at 14.) Construing this evidence in the light most favorable to Hudson, the court concludes that a reasonable juror could find that Boddie-Noell's employees were aware of the ice or that it existed for such a length of time that they should have discovered it.

Citing the Virginia Supreme Court's decision in Wynne v. Spainhour, 205 S.E.2d 634 (Va. 1974), Boddie-Noell alternatively argues that evidence is nonetheless insufficient, as a matter of law, to show that it was negligent. In Wynne, the plaintiff slipped on a patch of ice between two parked cars in the defendant's parking lot. Id. at 634-635. The evidence presented at trial, which was "without material conflict," revealed that "some three to four hours before the plaintiff fell, salt had been spread on the icy spots, including the spot where the fall occurred." Id. at 635. In setting aside the jury's verdict in favor of the plaintiff, the Supreme Court held that the defendant did not breach any duty owed to the plaintiff. Id. The Court emphasized that "[b]y scraping the snow from the parking lot soon after the storm and attempting thereafter to remove systematically the remaining spots of ice, the defendant did all that ordinary care required to maintain his premises in a reasonably safe condition for the plaintiff's visit." Id.

Having reviewed the record in the instant case, the court is unable to conclude that Wynne compels the entry of summary judgment in favor of the defendant. Unlike Wynne, the facts in this case are not "without material conflict." Id. Although Boddie-Noell's employees testified they shoveled and spread Ice Melt on the morning of the plaintiff's accident, Mary

8

Hudson testified that it did not appear that the area in front of the entrance had been cleared at all:

> Q. [D]id it appear that the sidewalk area in front of the door had been cleared or treated?
>
> A. No, it had not been cleared.
>
> Q. Okay. It had not been cleared at all?
>
> A. No.
>
> Q. Nobody had – it didn't look like anybody had shoveled?
>
> A. It didn't . . . look like anybody had done anything. It is just like you put it down there and there it was. There wasn't anything that anybody had chipped; there wasn't anything that you put out on it, that you could sprinkle on it, there wasn't anything.

(Mary Hudson Dep. at 42-43.)

Given the alleged location of the ice, and in light of Mary Hudson's testimony, the court is unable to conclude, as a matter of law, that Boddie-Noell did all that ordinary care required to maintain its premises in a reasonably safe condition for the plaintiff's visit. Instead, this issue must be decided by a jury.

### III. Proximate Cause

Boddie-Noell has also moved for summary judgment on the issue of proximate cause. Virginia law is clear that negligence will not be presumed from the mere happening of an accident; the plaintiff must prove that the defendant's negligent actions were the accident's proximate cause. Weddle v. Draper, 130 S.E.2d 462, 465 (Va. 1963). In the premises liability context, as the defendant notes in its brief, the plaintiff must establish that the unsafe condition of which he complains was the proximate cause of his injury. See Roll 'R' Way Rinks, Inc. v. Smith, 237 S.E.2d 157, 162 (Va. 1977). While evidence supporting proximate cause need not be

9

scientifically exact, it "must be sufficient to remove the case out of the realm of speculation and conjecture and into the realm of legitimate inference before submitting it to a jury for its determination." Blacka v. James, 139 S.E.2d 47, 50 (Va. 1964); see also Weddle, 130 S.E.2d at 466 ("It is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, he cannot recover.").

In moving for summary judgment on this issue, Boddie-Noell cites to Hudson's own deposition testimony and that of Deontay Gray, the only individual who saw Hudson fall. Boddie-Noell emphasizes that Hudson could not say what caused him to fall, and that Gray testified that Hudson appeared to miss the step up onto the curb in front of the restaurant. Although this issue is admittedly close in light of the evidence highlighted by the defendant, the court is constrained to conclude that the plaintiff's evidence, when viewed in his favor, is sufficient to survive summary judgment.

In reaching this decision, the court finds persuasive the Virginia Supreme Court's decision in Fobbs v. Webb Building Limited Partnership, 349 S.E.2d 355 (Va. 1986), in which the Court emphasized that facts establishing proximate cause "need not be proved by direct evidence, but instead, may be established by circumstantial evidence." Id. at 357. The plaintiff in Fobbs arrived to work at the defendant's office building on a rainy morning and slipped on the floor in front of the elevators. Id. at 356. Rain had been falling for a protracted period before the accident, causing water to accumulate near the entrance of the building. Id. at 358. Although the plaintiff "could not say what caused her to fall," she testified that she slipped on something slippery and "[o]ther witnesses testified that both before and after she fell, they observed water on the terrazzo floor in the vicinity of her fall." Id. The Supreme Court held that "[f]rom this

10

direct and circumstantial evidence, the jury reasonably could have found that the accumulation of water on the terrazzo floor in the vicinity of the elevators constituted a hazardous condition that caused Hobbs to fall." Id.

In the instant case, while Hudson cannot identify what caused him to fall, Hudson testified that his feet slipped out from under him as he attempted to open the door, and both his wife and Donald Dean testified that they observed a patch of ice on the sidewalk in the same area in which the accident occurred. Although Deontay Gray stated that Hudson appeared to essentially trip over the curb in front of the restaurant, Hudson testified that he "didn't have any trouble stepping up over the curb," and that it was not until he pulled on the door that his feet slipped out from under him. (Hudson Dep. at 65.)

Viewing the direct and circumstantial evidence in the light most favorable to Hudson, the court concludes that a reasonable jury could find that the accumulation of ice on the sidewalk adjacent to the restaurant's entrance caused Hudson to fall. Accordingly, the issue of proximate cause must be decided by a jury.

### IV. Contributory Negligence

For its final argument, Boddie-Noell contends that Hudson's claim is barred by the defense of contributory negligence. To establish contributory negligence, a defendant must show both that the plaintiff was negligent and that the plaintiff's negligence was a proximate cause of the plaintiff's injury. Rascher v. Friend, 689 S.E.2d 661, 664-65 (Va. 2010). "The issue whether a plaintiff is guilty of contributory negligence is ordinarily a question of fact to be decided by the fact finder. The issue becomes one of law for the [ ] court to decide only when reasonable minds

11

could not differ about what conclusion could be drawn from the evidence." Jenkins v. Pyles, 611 S.E.2d 404, 407 (Va. 2005).

To support its motion for summary judgement on this issue, Boddie-Noell argues that Hudson "fail[ed] to act reasonably for his own safety" and "fail[ed] to heed the open and obvious condition of snow and ice." (Def's Br. at 25.) For the reasons set forth above, however, the court is unable to conclude, as a matter of law, that the patch of ice was open and obvious, or that Hudson was negligent in the manner in which he attempted to enter the restaurant. As previously noted, a rational jury could find that a person who had successfully navigated the parking lot and sidewalk "could also reasonably believe that the entrance was navigable, especially where the ice at the entrance was allegedly black ice." Ashley v. Waffle House, 2006 U.S. Dist. LEXIS 2880, at *11; see also Kings Markets, Inc., 307 S.E.2d 249, 252 (Va. 1983) (declining to conclude that a customer who slipped on ice after departing a store was guilty of contributory negligence, and emphasizing that the customer "successfully negotiated his entrance from the parking lot to the store").

## Conclusion

For the reasons stated, Boddie-Noell's motion for summary judgment must be denied. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 13th day of June, 2012.

*[signature]*
Chief United States District Judge

12

Case 7:11-cv-00466-GEC   Document 52   Filed 06/13/12   Page 12 of 12   Pageid#: 736